
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

-vs-

XIANG DONG YU,

          Defendant.

_____/

No. 09-20304

HON. Gerald E. Rosen

OFFENSE: 18 U.S.C. § 1832 (Theft of Trade Secrets)

MAXIMUM PENALTY: 10 years' imprisonment

MAXIMUM FINE: $250,000

**FILED**

NOV 1 7 2010

CLERK'S OFFICE-DETROIT-PSG
U.S. DISTRICT COURT

## RULE 11 PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the defendant XIANG DONG YU and the government agree as follows:

1. **GUILTY PLEA**

    A. **Count of Conviction**

    The defendant will enter pleas of guilty to **Counts 2 and 3** of Indictment, which charge theft of trade secrets.

    B. **Elements of Offenses:**

    The elements of Counts 2 and 3 are as follows

    1. the defendant stole, or without authorization appropriated, took, or

FILED

NOV 1 7 2010

CLERK'S OFFICE
DETROIT

carried away the information at issue;

2.    the information was a trade secret;

3.    the defendant knew or had a firm belief that the information was a trade

secret;

4.    the defendant intended to convert the trade secret to the economic

benefit of someone other than the owner;

5.    the defendant intended or knew that the offense would injure the owner

of the trade secret; and

6.    the trade secret was related to or was included in a product that was

produced for or placed in interstate commerce.

**C.    Factual Basis for Guilty Plea**

The following facts are a sufficient and accurate basis for the defendant's

guilty pleas:

The defendant was employed by the Ford Motor Company from approximately

September, 1997 to January, 2007 as a Product Engineer.  In that capacity, the

defendant had access to trade secrets owned by Ford, including System Design

Specifications.   System Design Specification documents set forth detailed

performance requirements and associated verification testing methods, unique to

Ford vehicles, for numerous aspects of the major components of Ford vehicles.

On September 2, 1997, the defendant signed an "Employee Agreement" in which he agreed that he would not make any unauthorized disclosure of Ford proprietary information or retain copies of such information at the time his employment with Ford terminated.

On or about November 29, 2006, Foxconn, PCE Industry, Inc. offered the defendant a new job, which he accepted in writing on December 11, 2006. Foxconn, PCE Industry, Inc. manufactures electronic and computer products, including automotive electronic products. In December 2006, the defendant copied over four thousand Ford proprietary documents, including sixteen System Design Specification documents, from his Ford computer to an external hard drive. The majority of those System Design Specification documents did not relate to the defendant's work at Ford. On December 20, 2006, the defendant traveled to Shenzhen, China, the manufacturing hub of Foxconn, PCE Industry, Inc. and the defendant's assigned work location for that company, taking the Ford trade secret documents with him. On January 2, 2007, the defendant emailed his Ford supervisor from China and informed him that he was leaving Ford's employ. On January 4, 2007, the last day of the defendant's employment with Ford, he was reminded of his obligation not to disclose Ford proprietary information or retain copies of such information when he left Ford.

In November 2008, the defendant left the employ of Foxconn and began working for Beijing Automotive Company, a direct competitor of Ford. On October 14, 2009, the defendant returned to the United States, flying into Chicago from China. Upon his arrival, the defendant was arrested on a warrant issued upon the indictment in this case. At that time, the defendant had in his possession his Beijing Automotive Company laptop computer. Upon examination of that computer, the FBI discovered that all of the sixteen System Design Specifications with which the defendant is currently charged had been copied to the defendant's Beijing Automotive Company work computer. The FBI also discovered that each of those Ford System Design Specifications had been accessed by the defendant during the time of his employment with Beijing Automotive Company.

2.    **SENTENCING GUIDELINES**

A.    **Standard of Proof**

The Court will find sentencing factors by a preponderance of the evidence.

B.    **Agreed Guideline Range**

There are no sentencing guideline disputes. Except as provided below, the defendant's guideline range is **63-78 months**, as set forth on the attached worksheets. If the Court finds:

a) that the defendant's criminal history category is higher than reflected

on the attached worksheets, or

- 4 -

b) that the offense level should be higher because, after pleading guilty,

the defendant made any false statement to or withheld information from

his probation officer; otherwise demonstrated a lack of acceptance of

responsibility for his offense(s); or obstructed justice or committed any

crime,

and if any such finding results in a guideline range higher than **63-78 months**, the

higher guideline range becomes the agreed range.   However, if the Court finds that

the defendant is a career offender, an armed career criminal, or a repeat and

dangerous sex offender as defined under the sentencing guidelines or other federal

law, and that finding is not already reflected in the attached worksheets, this

paragraph does *not* authorize a corresponding increase in the agreed range.

Neither party may take a position concerning the applicable guidelines that is

different than any position of that party as reflected in the attached worksheets,

except as necessary to the Court's determination regarding subsections a) and b),

above.

### C.    <u>Relevant Conduct</u>

The  relevant conduct in this case includes the following: While employed with

Foxconn, the defendant made efforts to find new employment in the automotive

industry in China.  In March 2008, the defendant sought employment with Shanghai

Automotive Group.  In preparation for an interview with that company, the defendant

created a document entitled "DFSS-SHANGHAI," which was a compilation of Ford trade secret documents and information. The defendant ultimately accepted employment with the Beijing Automotive Company.

During the defendant's employment with Foxconn in China, he had access to sensitive information and technology of a third company, which was a client of Foxconn's. Upon leaving Foxconn, the defendant took with him sensitive trade secret documents of the third company, documents which were located on the defendant's Beijing Automotive Company laptop at the time of the defendant's arrest. Also on that laptop were an additional twenty-five Ford System Design Specification documents, the majority of which did not relate to the defendant's work while employed with Ford and all of which had been accessed by the defendant during his employment with Beijing Automotive Company. In addition, at least ten Ford Attribute Requirement Lists, design documents containing trade secret information, were also found on the defendant's Beijing Automotive Company computer.

3.    **SENTENCE**

The Court will impose a sentence pursuant to 18 U.S.C. §3553, and in doing so must consider the sentencing guideline range.

A.    **Imprisonment**

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) the sentence of

imprisonment in this case may not exceed the top of the sentencing guideline range as determined by Paragraph 2B.

### B.     Supervised Release

A term of supervised release follows the term of imprisonment. The Court **must** impose a term of supervised release on Count 2 & 3 of no less than **two years.** The agreement concerning imprisonment described above in Paragraph 3A does not apply to any term of imprisonment that results from any later revocation of supervised release.  In light of the defendant's agreement to the entry of a stipulated judicial order of removal, in accordance with paragraph 9, the parties agree that the defendant's supervised release will not include a reporting requirement and will include the condition that the defendant not re-enter the United States.

### C.     Special Assessment

The defendant will pay a special assessment of **$200** and must provide the government with a receipt for the payment before sentence is imposed.

### D.     Fine

There is no agreement as to fines.

### E.     Restitution

Restitution is not applicable to this case.

4.   **Use of Withdrawn Guilty Plea**

If the Court allows the defendant to withdraw his guilty plea for a "fair and just reason" pursuant to Fed. R. Crim. P. 11(d)(2)(B) , the defendant waives his rights under Fed. R. Evid. 410, and the government may use his guilty plea, any statement made under oath at the change-of-plea hearing, and the factual basis statement in this plea agreement, against him in any proceeding.

5.   **OTHER CHARGES**

If the Court accepts this agreement, the government will dismiss all remaining charges in this case.  In addition, the government will not bring additional charges based on the additional Ford trade secret documents found on his Beijing Automotive Company laptop, or on any other computers or electronic media associated with the defendant in the government's possession, or based on trade secret documents of other companies found on those computers and electronic media.

6.   **EACH PARTY'S RIGHT TO WITHDRAW FROM THIS AGREEMENT**

The government may withdraw from this agreement if the Court finds the correct guideline range to be different than is determined by Paragraph 2B.

The defendant may withdraw from this agreement, and may withdraw his guilty plea, if the Court decides to impose a sentence higher than the maximum allowed by Part 3.  This is the only reason for which the defendant may withdraw from this

agreement.  The Court shall advise the defendant that if he does not withdraw his guilty plea under this circumstance, the Court may impose a sentence greater than the maximum allowed by Part 3.

**7.      WAIVER OF APPEAL**

The defendant waives any right he may have to appeal his conviction.  If the sentence imposed does not exceed the maximum allowed by Part 3 of this agreement, the defendant also waives any right he may have to appeal his sentence. If the sentence imposed is within the guideline range determined by Paragraph 2B the government agrees not to appeal the sentence, but retains its right to appeal any sentence below that range.

**8.      Immigration Consequences of Guilty Plea**

The defendant acknowledges that his guilty plea in this case may affect or even foreclose his eligibility to enter or remain in this country.  The defendant has discussed these matters with his attorneys in this case, and he expressly agrees that his decision to plead guilty in this case is in no way conditioned upon or affected by the advice he has been given regarding any potential immigration consequences of his convictions.  The defendant further agrees that because his decision to plead guilty in this case is wholly independent of the immigration consequences of a conviction, the defendant agrees that he will not seek to challenge his guilty plea in any later proceeding via collateral attack on any basis relating to his immigration

status or lack thereof in this country.

**9.**   **Stipulated Judicial Order of Removal**

The defendant agrees to the entry of a stipulated judicial order of removal at the time of sentencing pursuant to Title 8, United States Code, Sections 1228(c)(5) and 1182. Specifically, the defendant admits that he is a native and citizen of China and that he is or upon sentencing will be removable from the United States pursuant to Title 8, United States Code, Sections 1182(a)(2)(A)(i)(I) and 1182(a)(2)(B).

**A.**   **Voluntary Waiver of Rights**

After consultation with counsel and understanding the legal consequences of doing so, the defendant knowingly and voluntarily waives the right to the notice, charging document, and hearing provided for in Title 8, United States Code, Section 1228(c)(2) and further waives any and all rights to appeal, reopen, reconsider, or otherwise challenge this stipulated removal order. The defendant understands and knowingly waives his right to a hearing before an immigration judge or any other authority under the Immigration and Nationality Act ("INA"), on the question of the defendant's removability from the United States. The defendant further understands the rights the defendant would possess in a contested administrative proceeding and waives these rights, including the defendant's right to examine the evidence against him, to present evidence on his behalf, and to cross-examine the witnesses presented by the government.

- 10 -

The defendant agrees to waive his rights to any and all forms of relief or protection from removal, deportation, or exclusion under the INA, as amended, and related federal regulations. These rights include, but are not limited to, the ability to apply for the following forms of relief or protection from removal: asylum; withholding of removal under Title 8, United States Code, Section 1231(b)(3); any protection from removal pursuant to Article 3 of the United Nations Convention Against Torture, including withholding or deferral of removal under 8 C.F.R. § 208; cancellation of removal; adjustment of status; registry; de novo review of a denial or revocation of temporary protected status (current or future); waivers under Title 8, United States Code, Sections 1182(h) or 1182(i); visa petitions; consular processing; voluntary departure or any other possible relief or protection from removal available under the Constitution, laws or treaty obligations of the United States. As part of this agreement, the defendant specifically acknowledges and states that the defendant has not been persecuted in, and has no present fear of persecution in, China on account of his race, religion, nationality, membership in a particular social group, or political opinion. Similarly, the defendant further acknowledges and states that the defendant has not been tortured in, and has no present fear of torture in China.

The defendant hereby requests that an order be issued by this Court for his removal to China. The defendant agrees to accept a written order of removal as a final disposition of immigration-related proceedings and waives any and all rights to

challenge or appeal any provision of this agreement in any United States or foreign court or tribunal.

The defendant hereby agrees to make the judicial order of removal a public document, waiving his privacy rights, including his privacy rights under 8 C.F.R. § 208.6.  (The concurrence of U.S. Immigration and Customs Enforcement ("ICE") with the government's request for a judicial order of removal will be obtained by sentencing).  As a result of the above-referenced order, upon the completion of the defendant's criminal proceedings, including any sentence of incarceration, the defendant shall be removed to China.

B.    **Assistance in the Execution of Removal**

The defendant agrees to reasonably and within his means assist ICE in the execution of his removal.  Specifically, the defendant agrees to assist ICE in the procurement of any travel or other documents necessary for the defendant's removal; to meet with and to cooperate with representatives of the country or countries to which the defendant's removal is directed; and, to execute those forms, applications, or waivers needed to execute or expedite the defendant's removal. The defendant further understands that his failure or refusal to reasonably and within his means assist ICE in the execution of his removal shall breach this plea agreement and may subject the defendant to criminal penalties under Title 8, United States Code, Section 1253.

- 12 -

## C.    Re-entry and Penalties

The defendant concedes that the entry of this judicial order of removal renders him permanently inadmissible to the United States. He agrees that he will not enter, attempt to enter, or transit through the United States without first seeking and obtaining permission to do so from the Secretary of the Department of Homeland Security or other designated representative of the U.S. government. The defendant agrees that in the event that the Court does not, for any reason, enter the judicial order of removal, the defendant shall enter into a stipulated order of removal with the Department of Homeland Security before the Executive Office for Immigration Review, and he shall not contest or hinder the execution of any order of removal that issues.

## 10.   CONSEQUENCES OF WITHDRAWAL OF GUILTY PLEAS OR VACATION OF CONVICTIONS

If the defendant is allowed to withdraw his guilty pleas or if any conviction entered pursuant to this agreement is vacated, the Court shall, on the government's request, reinstate any charges that were dismissed as part of this agreement. If additional charges are filed against the defendant within six months after the date the order vacating the defendant's conviction or allowing him to withdraw his guilty pleas becomes final, which charges relate directly or indirectly to the conduct underlying the guilty pleas or to any conduct reflected in the attached worksheets,

the defendant waives his right to challenge the additional charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

**11.    Forfeiture**

As part of this agreement, pursuant to 18 U.S.C. § 2323, the defendant agrees to forfeit to the United States, without contest, his interest in an external drive (Fantom Drives External Hard Drive, serial number 354226) and two lap top computers (H-P Laptop, serial number 2CE8220M9M and Toshiba Laptop, serial number 55304063K) that the defendant provided to the Federal Bureau of Investigation through his defense attorneys on July 6, 2010, which constitute property used, or intended to be used, in any manner or part to commit or facilitate the commission of 18 U.S.C. § 1832 as charged in the Indictment.

In entering into the foregoing agreement with respect to forfeiture, the defendant expressly waives his right to have a jury determine the forfeitability of his interest in the above identified properties as provided by Rule 32.2 of the Federal Rules of Criminal Procedure.

With respect to the above identified properties, the defendant agrees to the entry of one or more orders of forfeiture of his interest in such property upon application by the United States at, or any time before, his sentencing in this case, and agrees to sign a Stipulated Preliminary Order of Forfeiture with regard to the properties identified above. The defendant further agrees to hold the United States, its agents and employees harmless from any claims whatsoever in connection with the seizure or forfeiture of

property covered by this Plea Agreement.  If any other person or entity has any interest in the properties identified above, the defendant will reasonably and within his means assist in obtaining a release of interest from any such other person or entity.

In entering into this agreement with respect to forfeiture, the defendant knowingly, voluntarily, and intelligently waives any challenge to the above-described forfeiture based upon the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.

The defendant further waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, pronouncement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.  The defendant acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the court to advise him of this, pursuant to Rule 11(b)(1)(J), at the time his guilty plea is accepted.

## 12.   PARTIES TO PLEA AGREEMENT

Unless otherwise indicated, this agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

## 13.   SCOPE OF PLEA AGREEMENT

This agreement, which includes all documents that it explicitly incorporates, is the complete agreement between the parties. This agreement supersedes all other promises, representations, understandings and agreements between the

parties concerning the subject matter of this plea agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to the defendant or to the attorney for the defendant at any time before the defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this agreement.

Notwithstanding the previous paragraph, if the defendant has entered into a proffer agreement in writing or a cooperation agreement in writing with the government, this plea agreement does not supersede or abrogate the terms of any such prior written agreement.

This agreement also does not prevent any civil or administrative actions against defendant, or any forfeiture claim against any property, by the United States or any other party.

## 13.   ACCEPTANCE OF AGREEMENT BY DEFENDANT

This plea offer expires unless it has been received, fully signed, in the Office of the United States Attorney by **5:00 P.M. on November 4, 2010**. The government

reserves the right to modify or revoke this offer at any time before the defendant

pleads

guilty.

> BARBARA L. MCQUADE
> United States Attorney


_Jonathan Tukel / by cme_
JONATHAN TUKEL
ASSISTANT UNITED STATES ATTORNEY
CHIEF, NATIONAL SECURITY UNIT

_Cathl M. Corken_
CATHLEEN M. CORKEN
ASSISTANT UNITED STATES ATTORNEY


DATE: OCTOBER 6, 2010

BY SIGNING BELOW, DEFENDANT ACKNOWLEDGES THAT HE HAS READ (OR BEEN READ) THIS ENTIRE DOCUMENT, UNDERSTANDS IT, AND AGREES TO ITS TERMS. HE ALSO ACKNOWLEDGES THAT HE IS SATISFIED WITH HIS ATTORNEY'S ADVICE AND REPRESENTATION. DEFENDANT AGREES THAT HE HAS HAD A FULL AND COMPLETE

OPPORTUNITY TO CONFER WITH HIS LAWYER, AND HAS HAD ALL OF HIS QUESTIONS
ANSWERED BY HIS LAWYER.


DAVID DUMOUCHEL
ATTORNEY FOR DEFENDANT

XIANG DONG YU    11/3/2010
DEFENDANT

11/3/10
GEORGE DONNINI
ATTORNEY FOR DEFENDANT


JOSEPH RICHOTTE
ATTORNEY FOR DEFENDANT


DATE:


- 18 -

| Defendant: | Xiang Dong Yu | Count: | 2 and 3; Theft of Trade Secrets |
|---|---|---|---|
| Docket No.: | | Statute(s): | 18 U.S.C. § 1832 |

# WORKSHEET A (Offense Levels)

Complete one Worksheet A for each count of conviction (taking into account relevant conduct and treating each stipulated offense as a separate count of conviction) before applying the multiple-count rules in U.S.S.G. ch. 3, pt. D. However, in any case involving multiple counts of conviction, if the counts of conviction are all "closely related" to each other within the meaning of U.S.S.G. § 3D1.2(d), complete only a single Worksheet A.

## 1. BASE OFFENSE LEVEL AND SPECIFIC OFFENSE CHARACTERISTICS (U.S.S.G. ch. 2)

| Guideline Section | Description | Levels |
|---|---|---|
| 2B1.1. | Theft of Trade Secrets | 6 |
| | Loss > $50 Million | 24 |
| | | |
| | | |
| | | |

## 2. ADJUSTMENTS (U.S.S.G. ch. 3, pts. A, B, C)

| Guideline Section | Description | Levels |
|---|---|---|
| | | |
| | | |
| | | |

## 3. ADJUSTED OFFENSE LEVEL

Enter the sum of the offense levels entered in Items 1 and 2. If this Worksheet A does not cover every count of conviction (taking into account relevant conduct and treating each stipulated offense as a separate count of conviction), complete one or more additional Worksheets A and a single Worksheet B.

**30**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*If this is the only Worksheet A, check this box and skip Worksheet B.*

☐

*If the defendant has no criminal history, check this box and skip Worksheet C.*

☐

Defendant: _____     Count: _____

Docket No.: _____     Statute(s): _____

# WORKSHEET B   (Multiple Counts)

## Instructions  (U.S.S.G. ch. 3, pt. D):

- Group the counts of conviction into distinct Groups of Closely Related Counts.  "All counts involving substantially the same harm shall be grouped together into a single Group."  (*See* U.S.S.G. § 3D1.2.)

- Determine the offense level applicable to each Group.  (*See* U.S.S.G. § 3D1.3.)

- Determine the combined offense level by assigning "units" to each Group as follows (*see* U.S.S.G. § 3D1.4):

  - assign 1 unit to the Group with the highest offense level,
  - assign 1 unit to each additional Group that is equally serious as, or 1 to 4 levels less serious than, the Group with the highest offense level,
  - assign ½ unit to each Group that is 5 to 8 levels less serious than the Group with the highest offense level,
  - assign no units to each Group that is 9 or more levels less serious than the Group with the highest offense level.

1. **GROUP ONE**: COUNT(S) ___2 and 3___
   ADJUSTED OFFENSE LEVEL

2. **GROUP TWO**: COUNT(S) _____
   ADJUSTED OFFENSE LEVEL

3. **GROUP THREE**: COUNT(S) _____
   ADJUSTED OFFENSE LEVEL

4. **GROUP FOUR**: COUNT(S) _____
   ADJUSTED OFFENSE LEVEL

5. **TOTAL UNITS**

   1 unit

   unit

   unit

   unit

   units

6. **INCREASE IN OFFENSE LEVEL**

   1 unit ➔ no increase
   1 1/2 units ➔ add 1 level
   2 units ➔ add 2 levels
   2 1/2 - 3 units ➔ add 3 levels
   3 1/2 - 5 units ➔ add 4 levels
   > 5 levels ➔ add 5 levels

   0

7. **ADJUSTED OFFENSE LEVEL OF GROUP WITH THE HIGHEST OFFENSE LEVEL**

   30

8. **COMBINED ADJUSTED OFFENSE LEVEL**

   30

   Enter the sum of the offense levels entered in Items 6 and 7.

Rev. 8/2010

Defendant: _____  Count: _____

Docket No.: _____  Statute(s): _____

# WORKSHEET C   (Criminal History)

Date of defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses): _____

## 1.   PRIOR SENTENCES

**Prior Sentence of Imprisonment Exceeding 13 Months  (U.S.S.G. §§ 4A1.1(a)):**          **3 POINTS**

Enter 3 points for each prior adult sentence of imprisonment exceeding one year and one month that either (1) was imposed within 15 years of the defendant's commencement of the instant offenses (taking into account relevant conduct and stipulated offenses) or (2) resulted in the defendant's confinement during any part of that 15-year period.  (See U.S.S.G. §§ 4A1.1(a), 4A1.2(d)(1), (e)(1).)

**Prior Sentence of Imprisonment of at Least 60 Days  (U.S.S.G. §§ 4A1.1(b)):**          **2 POINTS**

Enter 2 points for each prior sentence of imprisonment of at least 60 days not counted under U.S.S.G. § 4A1.1(a) that either (1) resulted from an offense committed after the defendant turned 18 and was imposed within 10 years of the defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses) (see U.S.S.G. §§ 4A1.1(b), 4A1.2(e)(2)) or (2) resulted from an offense committed before the defendant turned 18 and resulted in the defendant's confinement during any part of the 5-year period preceding the defendant's commencement of the instant offense (see U.S.S.G. §§ 4A1.1(b), 4A1.2(d)(2)(A)).

**Other Prior Sentences  (U.S.S.G. §§ 4A1.1(c)):**          **1 POINT**

Enter 1 point for each prior sentence not counted under U.S.S.G. § 4A1.1(a) or (b) that either (1) resulted from an offense committed after the defendant turned 18 and was imposed within 10 years of the defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses) (see U.S.S.G. §§ 4A1.1(c), 4A1.2(d)(2)) or (2) resulted from an offense committed before the defendant turned 18 and was imposed within 5 years of the defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses) (see U.S.S.G. §§ 4A1.1(c), 4A1.2(d)(2)(B)).  NOTE:  No more than 4 points may be added under this item.

| Date of Imposition | Status* | Offense | Sentence | Release Date** | Points |
|---|---|---|---|---|---|
| 7/4/03 | | Disturbing the Peace | $360.00 fine | | 0 |
| 10/18/04 | | Attempted Eavesdropping | 12 Months Probation | | 1 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

\*   If the defendant committed the offense before turning 18, indicate whether he or she was sentenced as a juvenile (J) or as an adult (A).

\*\*   A release date is required in only three situations:  (1) when a sentence covered under U.S.S.G. § 4A1.1(a) was imposed more than 15 years before the defendant's commencement of the instant offense (taking into account relevant conduct and stipulated offenses) but resulted in his or her confinement during any part of that 15-year period; (2) when a sentence counted under U.S.S.G. § 4A1.1(b) was imposed for an offense committed before the defendant turned 18 but resulted in his or her confinement during any part of the 5-year period preceding his or her commencement of the instant offense (taking into account relevant conduct and stipulated offenses); and (3) when 2 criminal history points are added pursuant to U.S.S.G. § 4A1.1(e) because the defendant committed the instant offense (taking into account relevant conduct and stipulated offenses) shortly after or during imprisonment resulting from a sentence counted under U.S.S.G. § 4A1.1(a) or (b) or while he or she was on escape status for such a sentence.

Rev. 8/2010

Defendant: _____   Count: _____

Docket No.: _____   Statute(s): _____

(WORKSHEET C, p. 2)

**2.   COMMISSION OF INSTANT OFFENSE WHILE UNDER PRIOR SENTENCE (U.S.S.G. § 4A1.1(d))**

Enter 2 points if the defendant committed any part of the instant offense (taking into account relevant conduct and stipulated offenses) while under any criminal justice sentence having a custodial or supervisory component, including probation, parole, supervised release, imprisonment, work release, and escape status. (*See* U.S.S.G. §§ 4A1.1(d), 4A1.2(m), (n).) List the type of control and identify the sentence from which it resulted.

**3.   COMMISSION OF INSTANT OFFENSE SHORTLY AFTER OR DURING IMPRISONMENT (U.S.S.G. § 4A1.1(e))**

Enter 2 points if the defendant committed any part of the instant offense (taking into account relevant conduct and stipulated offenses) either less than 2 years after release from imprisonment on a sentence counted under U.S.S.G. §§ 4A1.1(a) or 4A1.1(b) or while in imprisonment or escape status on such a sentence. However, enter only 1 point for this item if 2 points were added under Item 2. (*See* U.S.S.G. §§ 4A1.1(e), 4A1.2(n).) List the date of release and identify the sentence from which it resulted.

**4.   PRIOR SENTENCE RESULTING FROM CRIME OF VIOLENCE   (U.S.S.G. § 4A1.1(f))**

Enter 1 point for each prior sentence resulting from a conviction for a crime of violence that did not receive any points under U.S.S.G. § 4A1.1(a), (b), or (c) because such sentence was considered related to another sentence resulting from a conviction for a crime of violence. But enter no points where the sentences are considered related because the offenses occurred on the same occasion. (*See* U.S.S.G. §§ 4A1.1(f), 4A1.2(p).) Identify the crimes of violence and briefly explain why the cases are considered related.  NOTE:  No more than 3 points may be added under this item.

**5.   TOTAL CRIMINAL HISTORY POINTS**
Enter the sum of the criminal history points entered in Items 1-4.

1

**6.   CRIMINAL HISTORY CATEGORY**

| Total Criminal History Points | Criminal History Category |
|---|---|
| 0-1 | I |
| 2-3 | II |
| 4-6 | III |
| 7-9 | IV |
| 10-12 | V |
| ≥13 | VI |

I

Rev. 8/2010

Defendant: _____     Count: _____

Docket No.: _____     Statute(s): _____

# WORKSHEET D   (Guideline Range)

**1.**   **(COMBINED) ADJUSTED OFFENSE LEVEL**

Enter the adjusted offense level entered in Item 3 of Worksheet A or the combined adjusted offense level
entered in Item 8 of Worksheet B.

> 30

**2.**   **ADJUSTMENT FOR ACCEPTANCE OF RESPONSIBILITY  (U.S.S.G § 3E1.1)**

> 3

**3.**   **TOTAL OFFENSE LEVEL**

Enter the difference between Items 1 and 2.

> 27

**4.**   **CRIMINAL HISTORY CATEGORY**

Enter "I" if the defendant has no criminal history.  Otherwise, enter the criminal history category
entered in Item 6 of Worksheet C.

> 1

**5.**   **CAREER OFFENDER/CRIMINAL LIVELIHOOD/ARMED CAREER
CRIMINAL/DANGEROUS SEX OFFENDER (U.S.S.G. ch. 4, pt. B)**

    a.   <u>Total Offense Level</u>:  If the career offender provision (U.S.S.G. § 4B1.1), the criminal livelihood provision
(U.S.S.G. § 4B1.3), the armed career criminal provision (U.S.S.G. § 4B1.4), or the dangerous sex offender
provision (U.S.S.G. § 4B1.5) results in a total offense level higher than the total offense level entered in
Item 3, enter the higher offense level total.

    b.   <u>Criminal History Category</u>:  If the career offender provision (U.S.S.G. § 4B1.1), the armed career criminal
provision (U.S.S.G. § 4B1.4), or the dangerous sex offender provision (U.S.S.G. § 4B1.5) results in a
criminal history category higher than the criminal history category entered in Item 4, enter the higher criminal
history category.

**6.**   **GUIDELINE RANGE FROM SENTENCING TABLE  (U.S.S.G. ch. 5, pt. A)**

Enter the guideline range in the Sentencing Table (*see* U.S.S.G. ch. 5, pt. A) produced by the total offense level entered in Item 3 or 5.a
and the criminal history category entered in Item 4 or 5.b.

> 70-87
> months

**7.**   **STATUTORY RESTRICTIONS ON OR SUPERSESSION OF GUIDELINE RANGE**

If the maximum sentence authorized by statute is below, or a minimum sentence required by statute is above, the guideline range entered
in Item 6, enter either the guideline range as restricted by statute or the sentence required by statute.  (*See* U.S.S.G. § 5G1.1.)  If the
sentence on any count of conviction is required by statute to be consecutive to the sentence on any other count of conviction, explain why.

> months

Rev.  8/2010

Defendant: _____     Count: _____

Docket No.: _____     Statute(s): _____

# WORKSHEET E   (Authorized Guideline Sentences)

1. ## PROBATION  (U.S.S.G. ch. 5, pt. B)

   a.  <u>Imposition of a Term of Probation</u>  (U.S.S.G. § 5B1.1)

   [X]  1.  Probation is not authorized by the guidelines (minimum of guideline range > 6 months or statute of conviction is a Class A or a Class B felony).  If this box is checked, go to Item 2 (Split Sentence).

   [ ]  2.  Probation is authorized by the guidelines (minimum of guideline range = zero months).

   [ ]  3.  Probation is authorized by the guidelines, provided the court imposes a condition or combination of conditions requiring intermittent confinement, community confinement, or home detention satisfying the minimum of the guideline range (minimum of guideline range > 0 months but ≤ 6 months).

   b.  <u>Length of Term of Probation</u>  (U.S.S.G. § 5B1.2)

   [ ]  1.  At least 1 year but not more than 5 years (total offense level ≥ 6).

   [ ]  2.  No more than 3 years (total offense level < 6).

   c.  <u>Conditions of Probation</u>  (U.S.S.G. § 5B1.3)

   The court must impose certain conditions of probation and may impose other conditions of probation.

2. ## SPLIT SENTENCE  (U.S.S.G. § 5C1.1(c)(2), (d)(2))

   [X]  a.  A split sentence is not authorized (minimum of guideline range = 0 months or > 10 months).

   [ ]  b.  A split sentence is authorized (minimum of guideline range > 0 months but ≤ 10 months).  The court may impose a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention for imprisonment, provided that at least one-half of the minimum of the guideline range is satisfied by imprisonment (if the minimum of the guideline range is 8, 9, or 10 months), or that at least one month is satisfied by imprisonment (if the minimum of the guideline range is 1, 2, 3, 4, or 6 months).  The authorized length of the term of supervised release is set forth below in Item 4.b.

3. ## IMPRISONMENT  (U.S.S.G. ch. 5, pt. C)

   A term of imprisonment is authorized by the guidelines if it is within the applicable guideline range (entered in Item 6 of Worksheet D).  (*See* U.S.S.G. § 5C1.1.)

Defendant: _____   Count: _____

Docket No.: _____   Statute(s): _____

**(WORKSHEET E, p. 2)**

## 4.    SUPERVISED RELEASE  (U.S.S.G. ch 5., pt. D)

a.    <u>Imposition of a Term of Supervised Release</u> (U.S.S.G. § 5D1.1)

The court must impose a term of supervised release if it imposes a term of imprisonment of more than one year, or if it is required to do so by statute.  The court may impose a term of supervised release if it imposes a term of imprisonment of one year or less.

b.    <u>Length of Term of Supervised Release</u> (U.S.S.G. § 5D1.2)

☐    1.    At least 3 years but not more than 5 years, where the count of conviction is a Class A or a Class B felony, i.e., an offense carrying a maximum term of imprisonment ≥ 25 years.

[X]    2.    At least 2 years but not more than 3 years, where the count of conviction is a Class C or a Class D felony, i.e., an offense carrying a maximum term of imprisonment ≥ 5 years but < 25 years.

☐    3.    1 year, where the count of conviction is a Class E felony or a Class A misdemeanor,  i.e., an offense carrying a maximum term of imprisonment > 6 months but < 5 years.

☐    4.    The statute of conviction requires a minimum term of supervised release of ___ months.

c.    <u>Conditions of Supervised Release</u>  (U.S.S.G. § 5D1.3)

The court must impose certain conditions of supervised release and may impose other conditions of supervised release.

## 5.    RESTITUTION  (U.S.S.G. § 5E1.1)

☐    1.    The court *must* order full restitution to the victim(s) of the offense(s) of conviction.  (*See* 18 U.S.C. §§ 3556, 3663A, 3664.)  The court will determine who the victims are and their restitution amounts.

☐    2.    The court *must* order full restitution to the victim(s) of the offense(s) of conviction.  (*See* 18 U.S.C. §§ 3556, 3663A, 3664)  The parties agree that full restitution is **$**___ .

☐    3.    The parties agree that the court *may* order restitution to the victim(s) of the offense(s) of conviction in any amount up to and including **$**___ .  (*See* 18 U.S.C. §§ 3663(a)(3), 3664.)

☐    4.    The parties agree that the court ***may also*** order restitution to persons other than the victim(s) of the offense(s) of conviction in any amount up to and including **$**___ .  (*See* 18 U.S.C. §§ 3663(a)(1)(A), 3663A(a)(3), 3664.)

[X]    5.    Restitution is not applicable.

Rev. 8/2010

Defendant: _____     Count: _____

Docket No.: _____     Statute(s): _____

**(WORKSHEET E, p. 3)**

6.   **FINE** (U.S.S.G. § 5E1.2)

    a.  <u>Fines for Individual Defendants</u>

The court must impose a fine unless "the defendant establishes that he [or she] is unable to pay and is not likely to become able to pay any fine." (*See* U.S.S.G. § 5E1.2(a).)  Generally, the fine authorized by the guidelines is limited to the range established in the Fine Table. (*See* U.S.S.G. § 5E1.2(b).)  However, there are exceptions to this general rule. (*See* U.S.S.G. § 5E1.2(b), (c)(4).)

    b.  <u>Fine Range from Fine Table</u>  (U.S.S.G. § 5E1.2(c)(3))

| <u>Minimum Fine</u> | <u>Maximum Fine</u> |
|---|---|
| $ 15,000.00 | $ 150,000.00 |

7.   **SPECIAL ASSESSMENT(S)** (U.S.S.G. § 5E1.3)

The court must impose a special assessment on every count of conviction.  The special assessments for individual defendants are

    $100.00 for every count charging a felony ($400 for a corporation)
    $ 25.00 for every count charging a Class A misdemeanor ($125 for a corporation),
    $ 10.00 for every count charging a Class B misdemeanor ($50 for a corporation), and
    $  5.00 for every count charging a Class C misdemeanor or an infraction ($25 for a corporation).

The defendant must pay a special assessment or special assessments in the total amount of $ 200.00 .

8.   **FORFEITURE** (U.S.S.G. § 5E1.4)

☐  Assets of the defendant will be forfeited.          [X]  Assets of the defendant will not be forfeited.

9.   **ADDITIONAL APPLICABLE GUIDELINES, POLICY STATEMENTS, AND STATUTES**

List any additional applicable guideline, policy statement, or statute.

_____

10.   **UPWARD OR DOWNWARD DEPARTURE** (U.S.S.G. ch. 5, pts. H & K)

List any applicable aggravating or mitigating circumstance that might support a term of imprisonment above or below the applicable guideline range.

Under § 5K2(a)(2)(B), a downward departure of one level is appropriate based on the defendant's efforts in

obtaining computers from China on which he copied the trade secret information and in providing those

computers to the F.B.I.  The resulting guideline range is, therefore, 63-78 months.